# EXHIBIT 2

PREMIUM BILL

Insured:   CONSTRUCTION FINANCIAL ADMINISTRATION SERVICES          Date:   07/18/2017
           LLC/DBA CFAS

Producer:   ARC MIDATLANTIC EXCESS & SURPLUS INC
            129 B JOHNSON RD STE #5
            TURNERSVILLE, NJ 08012-0000

Company:   Federal Insurance Company

THIS BILLING IS TO BE ATTACHED TO AND FORM A PART OF THE POLICY REFERENCED BELOW.

Policy Number:  8243-6189

Policy Period:   August 21, 2017 to August 21, 2018

NOTE: PLEASE RETURN THIS BILL WITH REMITTANCE AND NOTE HEREON ANY CHANGES. BILL WILL BE
RECEIPTED AND RETURNED TO YOU PROMPTLY UPON REQUEST.

PLEASE REMIT TO PRODUCER INDICATED ABOVE. PLEASE REFER TO 8243-6189

| Product | Effective Date | Premium |
|---------|---------------|---------|
| CBPROE&O | 08/21/17 | $5,269.00 |
|  |  |  |
|  |  |  |

* For Kentucky policies, amount displayed includes tax and collection fees.

| | |
|---|---|
| **TOTAL POLICY PREMIUM** | $5,269.00 |
| **TOTAL INSTALLMENT PREMIUM DUE** | $5,269.00 |

# POLICYHOLDER
# DISCLOSURE NOTICE OF
# TERRORISM INSURANCE COVERAGE
**(for policies with no terrorism exclusion or sublimit)**
**Insuring Company: Federal Insurance Company**

You are hereby notified that, under the Terrorism Risk Insurance Act (the "Act"), this policy makes available to you insurance for losses arising out of certain acts of terrorism. Terrorism is defined as any act certified by the Secretary of the Treasury of the United States, to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States Mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

You should know that the insurance provided by your policy for losses caused by acts of terrorism is partially reimbursed by the United States under the formula set forth in the Act.  Under this formula, the United States pays 85% of covered terrorism losses that exceed the statutorily established deductible to be paid by the insurance company providing the coverage. Beginning in 2016, the Federal share will be reduced by 1% per year until it reaches 80%, where it will remain.

However, if aggregate insured losses attributable to terrorist acts certified under the Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

If aggregate insured losses attributable to terrorist acts certified under the Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

The portion of your policy's annual premium that is attributable to insurance for such acts of terrorism is: $ **-0-.**

If you have any questions about this notice, please contact your agent or broker.

10-02-1281 (Ed. 03/2015)

# IMPORTANT NOTICE TO POLICYHOLDERS

Insuring Company: Federal Insurance Company

All of the members of the Chubb Group of Insurance companies doing business in the United States (hereinafter "Chubb") distribute their products through licensed insurance brokers and agents ("producers").  Detailed information regarding the types of compensation paid by Chubb to producers on US insurance transactions is available under the Producer Compensation link located at the bottom of the page at www.chubb.com, or by calling 1-866-588-9478.  Additional information may be available from your producer.

Thank you for choosing Chubb.

10-02-1295 (ed. 6/2007)

**CHUBB®**

**Chubb Group of Insurance Companies**
202B Hall's Mill Road
Whitehouse Station, NJ 08889

**CHUBB *PROE&O*<sup>SM</sup>**

---

DECLARATIONS

**FEDERAL INSURANCE COMPANY**
A stock insurance company, incorporated under the laws
of Indiana, herein called the Company

Policy Number: 8243-6189

**NOTICE: THIS IS A CLAIMS MADE AND REPORTED POLICY, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE AND REPORTED IN WRITING DURING THE "POLICY PERIOD," OR ANY EXTENDED REPORTING PERIOD. THE LIMIT OF LIABILITY TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY "DEFENSE COSTS," AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE RETENTION AMOUNT. THE COVERAGE AFFORDED UNDER THIS POLICY DIFFERS IN SOME RESPECTS FROM THAT AFFORDED UNDER OTHER POLICIES. READ THE ENTIRE POLICY CAREFULLY.**

ITEM 1. **PARENT ORGANIZATION** -NAME AND ADDRESS:

CONSTRUCTION FINANCIAL ADMINISTRATION SERVICES LLC/DBA CFAS
4956 Long Beach Road, STE 14 #110
Southport, NC 28461

ITEM 2. **POLICY PERIOD**:
(A) Inception Date: August 21, 2017

(B) Expiration Date: August 21, 2018
at 12:01 a.m. both dates at the Address in ITEM 1.

ITEM 3. **LIMITS OF LIABILITY** (inclusive of **Defense Costs**):

(A) $2,000,000.00 maximum limit of liability each **Claim** or **Related Claims**, but not to exceed

(B) $2,000,000.00 maximum aggregate limit of liability under this Policy for all **Claims**.

ITEM 4. **RETENTION AMOUNT**: $5,000.00 each **Claim** or **Related Claims**.

ITEM 5. **EXTENDED REPORTING PERIOD**:

(A)   Additional Period          (B)   Additional Premium
        1 year                                  100% of Annual Premium

ITEM 6. **INSURED SERVICES**:

As per Endorsement 14-02-15491

ITEM 7. **PRIOR ACTS DATE**: August 21, 2015, at 12:01 a.m. at the Address in ITEM 1.

ITEM 8. **PREMIUM:** $5,269.00

**These Declarations, the completed signed Application and this Policy with Endorsements shall constitute the contract between the Insured and the Company.**

CHUBB®   **Chubb Group of Insurance Companies**   **CHUBB *PROE&O*[SM]**
202B Hall's Mill Road
Whitehouse Station, NJ 08889

In witness whereof, the Company issuing this Policy has caused this Policy to be signed by its authorized officers, but it shall not be valid unless also signed by a duly authorized representative of the Company.

### FEDERAL INSURANCE COMPANY

Secretary

President

07/18/17
Date

Authorized Representative

14-02-8637 (Ed. 7/2003)          Page 2 of 14



**CHUBB** *PROE&O*<sup>SM</sup>

---

In consideration of payment of the premium and subject to the Declarations, limitations, conditions, provisions and other terms of this Policy, the Company and the **Insureds** agree as follows:

---

**I.   INSURING CLAUSE**

The Company shall pay **Loss** on behalf of the **Insureds** resulting from any **Claim** first made against such **Insureds** and reported to the Company in writing during the **Policy Period**, or any Extended Reporting Period, for **Wrongful Acts** committed by the **Insureds** solely in the performance of or failure to perform **Insured Services** on or after the Prior Acts Date set forth in Item 7 of the Declarations and before the Policy terminates.

---

**II.   DEFINITIONS**

(A)   **Application** means all signed applications, including attachments and other materials submitted therewith or incorporated therein, submitted by the **Insureds** to the Company for this Policy or for any policy of which this Policy is a direct or indirect renewal or replacement. **Application** shall also include all documents provided by the **Insureds** to the Company in connection with the underwriting or issuance of this Policy, including quarterly and annual reports, financial statements, proxy statements and other notices to shareholders, whether provided to the Company directly or indirectly through the use of public databases or similar sources.

(B)   **Claim** means

(1)   any of the following:

(a)   a written demand for monetary damages or non-monetary relief;

(b)   a civil proceeding commenced by the service of a complaint or a similar pleading; or

(c)   an arbitration proceeding,

against an **Insured** for a **Wrongful Act**, including any appeal therefrom; or

(2)   a written request  to toll or waive a statute of limitations relating to a potential **Claim** described in paragraph (1) above.

Except as may be provided in Section IX Reporting, a **Claim** will be deemed to have been first made when such **Claim** is commenced as set forth in this definition (or, in the case of a written demand or request, including but not limited to a demand for arbitration, when such demand or request is first received by an **Insured**).

(C)   **Debtor in Possession** means a debtor in possession as such term is used in Chapter 11 of the United States of America Bankruptcy Code.

(D)   **Defense Costs** means that part of **Loss** consisting of reasonable costs, charges, fees (including attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries or fees of the directors, officers or employees of the **Insured Organization**) incurred in defending any **Claim** and the premium for appeal, attachment or similar bonds.

(E)   **Employee** means any natural person whose labor or service is engaged by and directed by the **Insured Organization**, including part-time, seasonal, leased and temporary employees, as well as volunteers. **Employee** shall not include any independent contractor.

(F)   **Environmental Agents** means any:



(1)     bacteria;

(2)     mildew, mold, or other fungi;

(3)     other microorganisms;

(4)     mycotoxins, spores, or other by-products of (1), (2) or (3) above;

(5)     viruses or other pathogens (whether or not a microorganism); or

(6)     colony or group of any of the foregoing.

(G)     **Insured(s)** means the **Insured Organization** and any **Insured Person**.

(H)     **Insured Organization** means the **Parent Organization**; any **Subsidiary** created at any time; and any **Subsidiary** acquired before the Policy inception date set forth in Item 2(A) of the Declarations or, subject to Section XIII Changes in Exposure, during the **Policy Period**. **Insured Organization** shall also mean any such entity as a **Debtor in Possession** or in an equivalent status under the law of any country other than the United States.

(I)     **Insured Person(s)** means any past, present or future natural person director, officer, partner, or **Employee** of the **Insured Organization**, but only while such person was, is or shall be acting within the scope of his or her duties as such.  Coverage under this Policy shall also extend to:

(1)     the lawful spouse of an  **Insured Person**, if named as a co-defendant with such **Insured Person** solely by reason of such spouse's status as a spouse, or such spouse's ownership interest in property that is sought by a claimant as recovery for an alleged **Wrongful Act** of such **Insured Person**; and

(2)     in the event of the death, incapacity or bankruptcy of an **Insured Person**, the estate, heirs, legal representatives or assigns of such **Insured Person,**

but any such coverage shall apply only with respect to a **Wrongful Act** of such **Insured Person**. All terms and conditions of this Policy including, without limitation, the Retention Amount applicable to **Loss** incurred by the **Insured Person**, shall also apply to **Loss** incurred by the **Insured Person's** spouse, estate, heirs, legal representatives or assigns.

(J)     **Insured Services** means only services that  (i) are performed for others for a fee and (ii) are identified in Item 6 of the Declarations, including any such services that are performed electronically utilizing the Internet or a network of two or more computers.

(K)     **Liquidated Damages** means a sum of money stipulated by the parties to a contract as the amount of damages to be recovered for a breach of such contract.

(L)     **Loss** means the total amount which any **Insured** becomes legally obligated to pay as a result of any **Claim** made against such **Insured**, including:

(1)     damages, including punitive or exemplary damages, to the extent such damages are insurable under the law most favorable to the insurability of such damages of any jurisdiction which has a substantial relationship to the **Insureds**, the Company, this Policy or the **Claim**;

(2)      judgments and settlements;

(3)     pre-judgment and post-judgment interest; and

CHUBB®

CHUBB *PROE&O*^SM

(4)     **Defense Costs**.

**Loss** does not include:

(i)     any amount for which an **Insured Organization** or an **Insured Person** is absolved from payment by reason of any covenant, agreement (other than an agreement by the **Insured Organization** to indemnify an **Insured Person**) or court order;

(ii)    matters uninsurable under the law pursuant to which this Policy is construed;

(iii)   taxes, fines or penalties imposed by law (except as provided above with respect to punitive or exemplary damages), **Liquidated Damages** or the multiple portion of any multiplied damage award;

(iv)    the return of fees or other compensation paid to the **Insured;**

(v)     the cost of correcting, re-performing or completing any **Insured Services**; or

(vi)    any amount allocated to uncovered loss pursuant to Section XII Allocation.

(M)   **Parent Organization** means the entity named in Item 1 of the Declarations.

(N)   **Policy Period** means the period of time set forth in Item 2 of the Declarations, subject to any prior termination in accordance with Section XX Termination of Policy.

(O)   **Pollutants** means any substance located anywhere in the world exhibiting any hazardous characteristics as defined by, or identified on a list of hazardous substances issued by, the United States Environmental Protection Agency or any state, county, municipality or locality counterpart thereof.   Such substances shall include, without limitation, solids, liquids, gaseous or thermal irritants, contaminants or smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste materials. **Pollutants** shall also mean any other air emission, odor, waste water, oil or oil products, infectious or medical waste, asbestos or asbestos products and any noise.

(P)   **Pollution** means the actual, alleged or threatened discharge, release, escape or disposal of **Pollutants** into or on real or personal property, water or the atmosphere or any direction or request that the **Insured** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**, or any voluntary decision to do so.

(Q)   **Related Claims** means all **Claims** for **Wrongful Acts** based upon, arising from, or in consequence of the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events.

(R)   **Securities Laws** means the Securities Act of 1933, Securities Exchange Act of 1934, Investment Company Act of 1940, any state "blue sky" law, any other federal, state or local securities law or any amendment thereto or any rule or regulation promulgated thereunder, or any other provision of statutory or common law that regulates or imposes liability in connection with the offer to sell or purchase, or the sale or purchase of securities.

(S)   **Subsidiary** means:

(1)     any entity during any time in which the **Parent Organization** owns or controls, directly or through one or more **Subsidiaries**, more than fifty percent (50%) of the outstanding securities of such entity or the right to elect or appoint more than fifty percent (50%) of such entity's directors or trustees;



CHUBB *PROE&O*<sup>SM</sup>

(2)     any limited liability company during any time in which the **Parent Organization** owns or controls, directly or through one or more **Subsidiaries**, the right to elect, appoint or designate more than fifty percent (50%) of such entity's managers; or

(3)     any corporation during any time in which the **Parent Organization** both (i) owns, directly or through one or more **Subsidiaries**, exactly fifty percent (50%) of such corporation's  issued and outstanding voting stock and  (ii) solely controls the management and operation of such corporation pursuant to a written agreement with the owner(s) of the remaining issued and outstanding voting stock of such corporation.

(T)     **Wrongful Act(s)** means any actual or alleged negligent act, error or omission committed, attempted, or allegedly committed or attempted, solely in the performance of or failure to perform **Insured Services**, by an **Insured Organization** or by an **Insured Person** acting in his or her capacity as such and on behalf of an **Insured Organization**.

## III.     EXCLUSIONS

(A)     No coverage will be available under this Policy for any **Claim** against an **Insured**:

(1)     based upon, arising from, or in consequence of any circumstance, if written notice of such circumstance has been given under any policy of which this Policy is a direct or indirect renewal or replacement and if such prior policy affords coverage (or would afford such coverage except for the exhaustion of its limits of liability) for such **Claim**, in whole or in part, as a result of such notice;

(2)     based upon, arising from, or in consequence of any written demand, suit, or other proceeding pending, or order, decree or judgment entered for or against any **Insured** on or prior to the inception date of this Policy, as set forth in Item 2(A) of the Declarations, or the same or any substantially similar fact, circumstance or situation underlying or alleged therein;

(3)     based upon, arising from, or in consequence of **Pollution**;

(4)     based upon, arising from, or in consequence of any:

(a)     **Environmental Agents**;

(b)     request, demand, order or regulatory or statutory requirement that any **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of any **Environmental Agents**; or

(c)     action or proceeding by or on behalf of a governmental authority or others for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of any **Environmental Agents**;

(5)     for bodily injury, sickness, disease or death of any person or damage to or destruction of any tangible property, including the loss of use thereof whether or not it is damaged or destroyed;

(6)     for any actual or alleged violation of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, or any amendments thereto or any rules or regulations promulgated thereunder, or any similar provisions of any federal, state, or local statutory law or common law anywhere in the world;



(7)    based upon, arising from, or in consequence of the performance of or failure to perform **Insured Services** for:

    (a)    any **Insured**;

    (b)    any entity which is owned or controlled by, or is under common ownership or control with, any **Insured**;

    (c)    any natural person or entity which owns or controls any entity included within the definition of **Insured**; or

    (d)    any entity of which any **Insured** is a director, officer, partner or principal shareholder;

(8)    brought or maintained by or on behalf of any **Insured**;

(9)    for any liability assumed by the **Insured** under any contract, except to the extent that such liability would have attached to the **Insured** even in the absence of such contract;

(10)    based upon, arising from, or in consequence of any actual or alleged guaranty, promise or warranty, either express or implied, or verbal or written, relating to costs or cost savings;

(11)    based upon, arising from, or in consequence of any actual or alleged violation of the **Securities Laws**;

(12)    based upon, arising from, or in consequence of any actual or alleged infringement of copyright, patent, service mark, trademark, or trade name, or misappropriation of ideas or trade secrets;

(13)    based upon, arising from, or in consequence of allegations of price fixing, restraint of trade, monopolization, unfair trade practices or any actual or alleged violation of the Federal Trade Commission Act, the Sherman Anti-Trust Act, the Clayton Act, or any other federal statutory provision involving anti-trust, monopoly, price fixing, price discrimination, predatory pricing or restraint of trade activities, or  any amendment to or any rule or regulation promulgated under or in connection with any such statute; or any similar provision of any federal, state, or local statutory law or common law anywhere in the world;

(14)    based upon, arising from, or in consequence of any fraudulent act or omission or  any willful violation of any statute or regulation by such **Insured**, if a final and non-appealable judgment or adjudication adverse to such **Insured** establishes such a fraudulent act or omission or willful violation; or

(15)    based upon, arising from, or in consequence of such **Insured** having gained in fact any profit, remuneration or advantage to which such **Insured** was not legally entitled.

(B)    No coverage will be available under this Policy for **Loss**, other than **Defense Costs**, based upon, arising from or in consequence of any **Claim** (or portion of a **Claim**) for non-monetary relief or for enforcement of any order for, grant of or agreement to provide non-monetary relief.

(C)    **Severability of Exclusions**

With respect to Exclusions (A)(14) and (A)(15) of this Policy:

(1)    no fact pertaining to or knowledge possessed by any **Insured Person** shall be imputed to any other **Insured Person** to determine if coverage is available; and



**CHUBB _PROE&O_<sup>SM</sup>**

(2) only facts pertaining to and knowledge possessed by any past, present or future chief financial officer, in-house general counsel, risk manager, president, chief executive officer or chairperson of an **Insured Organization** shall be imputed to such **Insured Organization** to determine if coverage is available.

## IV. OTHER INSURANCE

This Policy shall be specifically excess over, and shall not contribute with, any other valid and collectible insurance, whether such other insurance is stated to be primary, contributing, excess (except insurance specifically in excess of this Policy), contingent or otherwise.

## V. TERRITORY

Coverage shall extend anywhere.

## VI. EXTENDED REPORTING PERIOD

(A) If this Policy is either terminated or not renewed for any reason other than nonpayment of premium, any **Insured Organization** or any **Insured Person** shall have the right to purchase an Extended Reporting Period for the period set forth in Item 5 of the Declarations. This right to purchase an Extended Reporting Period shall lapse unless written notice of election to purchase the Extended Reporting Period, together with payment of the additional premium due, as set forth in Item 5 of the Declarations, is received by the Company within thirty (30) days after the end of the **Policy Period**.

(B) If the Extended Reporting Period is purchased, then coverage otherwise afforded by this Policy will be extended to apply to **Loss** from **Claims** first made during such Extended Reporting Period but only for **Wrongful Acts** committed or allegedly committed before the end of the **Policy Period** or the date of any conversion of coverage described in Section XIII Changes in Exposure, whichever is earlier. The entire additional premium for the Extended Reporting Period shall be deemed fully earned at the inception of such Extended Reporting Period. The Limit of Liability for the Extended Reporting Period shall be part of and not in addition to the applicable Limits of Liability for the **Policy Period**.

## VII. LIMIT OF LIABILITY

(A) The Company's maximum liability for all **Loss** from each **Claim** first made during the **Policy Period** shall not exceed the Each **Claim** Limit of Liability set forth in Item (3)(A) of the Declarations, which amount shall be part of and not in addition to the amount stated in Item 3(B) of the Declarations.

(B) The Company's maximum aggregate liability for all **Loss** from all **Claims** first made during the **Policy Period** shall not exceed the Aggregate Limit of Liability set forth in Item 3(B) of the Declarations, regardless of the number of **Claims**.

(C) **Defense Costs** are part of and not in addition to the Limits of Liability set forth in Item 3 of the Declarations, and payment by the Company of **Defense Costs** shall reduce and may exhaust such Limits of Liability.



**CHUBB** *PROE&O*<sup>SM</sup>

---

**VIII.   RETENTION AMOUNT**

(A)   The Company's liability with respect to **Loss** arising from each **Claim** covered under this Policy shall apply only to that part of **Loss** which is in excess of the Retention Amount set forth in Item 4 of the Declarations.

(B)   Such Retention Amount shall be borne by the **Insureds** uninsured and at their own risk.

---

**IX.   REPORTING**

(A)   **Reporting of Claims and Wrongful Acts:**

(1)   If a **Claim** is made against any **Insured**, the **Insureds** or the **Parent Organization** shall immediately forward to the Company every demand, notice, summons, complaint or other process received by the **Insureds** or their representatives.

(2)   If during the **Policy Period** an **Insured** becomes aware of a **Wrongful Act** which may subsequently give rise to a **Claim**, and during the **Policy Period** the **Insureds**:

(a)   give the Company written notice of such **Wrongful Act**, including a description of the **Wrongful Act** in question, the identities of the potential claimants, the consequences which have resulted or may result from the **Wrongful Act**, the damages which may result from the **Wrongful Act** and the circumstances by which the **Insureds** first became aware of the **Wrongful Act;** and

(b)   request coverage under this Policy for any subsequently resulting **Claim** for such **Wrongful Act**,

then the Company will treat any such subsequently resulting **Claim** as if it had been made against the **Insureds** during the **Policy Period** and, provided that written notice of such **Claim** is then given to the Company as soon as practicable after it is first made, as if such **Claim** had also been reported to the Company during the **Policy Period**.

(3)   All notices of **Claims** required under Section IX(A)(1) and notices of **Wrongful Acts** under Section IX(A)(2) must be sent by certified mail to the address set forth in Section X Notice.

(B)   **Additional Time in which to Report Claims Made at the End of the Policy Period:**

If a **Claim** is first made against an **Insured** during the last fourteen (14) calendar days of the **Policy Period**, such **Claim** will be treated as if it had been reported to the Company during the **Policy Period** if:

(1)   the **Insureds** make reasonable efforts to report such **Claim** immediately; and

(2)   the **Insureds** give the Company written notice of such **Claim** no later than thirty (30) calendar days after the end of the **Policy Period**.

(C)   **Interrelationship of Claims:**

All **Related Claims** will be treated as a single **Claim** made at the time the first of such **Related Claims** was made in accordance with Section II(B) above, or when the first of such **Related Claims** is treated as having been made in accordance with Section IX(A)(2), whichever is earlier.



CHUBB *PROE&O*<sup>SM</sup>

---

**X.     NOTICE**

(A)     All notices to the Company under this Policy of **Claims** or circumstances shall be given in writing addressed to:

> Attn:  Claims Department
> Chubb Group of Insurance Companies
> 82 Hopmeadow St.
> Simsbury, CT 06070-7683

(B)     All other notices to the Company under this Policy shall be given in writing addressed to:

> Attn:  Underwriting
> Chubb Group of Insurance Companies
> 82 Hopmeadow St.
> Simsbury, CT 06070-7683

(C)     Any notice given under X(A) or X(B) above shall be effective on the date of receipt by the Company at the address shown.

---

**XI.     DEFENSE AND SETTLEMENT**

(A)     The Company shall have the right and duty to defend any **Claim** covered by this Policy even if any of the allegations are groundless, false or fraudulent.  The Company's duty to defend any **Claim** shall cease upon exhaustion of the applicable Limit of Liability.

(B)     The Company may make any investigation it deems necessary and may, with the consent of the **Insured**, make any settlement of any **Claim** it deems expedient. If any **Insured** withholds consent to any settlement acceptable to the claimant in accordance with the Company's recommendation (a "Proposed Settlement"), then the Company's liability for all **Loss**, including **Defense Costs**, from such **Claim** shall not exceed the amount of the Proposed Settlement plus **Defense Costs** incurred up to the date of the **Insured's** refusal to consent to the Proposed Settlement of such **Claim**.

(C)     No **Insured** shall settle or offer to settle any **Claim**, incur any **Defense Costs**, or otherwise assume any contractual obligation or admit any liability with respect to any **Claim** without the Company's prior written consent, which shall not be unreasonably withheld.  The Company shall not be liable for any settlement, **Defense Costs**, assumed obligation or admission to which it has not given its prior written consent.

(D)     The Company will have no obligation to pay **Loss**, including **Defense Costs**, or to defend or continue to defend any **Claim** after the Company's applicable Limit of Liability with respect to such **Claim** has been exhausted by the payment of **Loss**.  If the Company's Limit of Liability is exhausted by the payment of **Loss** prior to the expiration of this Policy, the Policy premium will be deemed fully earned.

(E)     The **Insureds** agree to provide the Company with all information, assistance and cooperation which the Company may reasonably require and agree they will do nothing that may prejudice the Company's position or its potential or actual rights of recovery.



**CHUBB** *PROE&O*<sup>SM</sup>

---

**XII.   ALLOCATION**

If in any **Claim** the **Insureds** incur both **Loss** that is covered by this Policy and also loss that is not covered by this Policy, either because such **Claim** includes both covered and uncovered matters or because such **Claim** is made against both covered and uncovered parties, then coverage shall apply as follows:

(A)    **Defense Costs**: one hundred percent (100%) of reasonable and necessary **Defense Costs** incurred by the **Insureds** from such **Claim** will be considered covered **Loss**; and

(B)    loss other than **Defense Costs**:  all remaining loss incurred by the **Insureds** from such **Claim** will be allocated between covered **Loss** and uncovered loss based upon the relative legal exposures of the parties to such matters.

---

**XIII.   CHANGES IN EXPOSURE**

(A)    Acquisition of Another Organization

(1)    If any **Insured Organization** acquires another entity or merges with another entity (each an "Acquired Organization") such that the **Insured Organization** is the surviving entity, and if as a result of such acquisition or merger the Acquired Organization becomes (or would, but for its absorption into the **Insured Organization**, have become) a **Subsidiary**, then, subject to the provisions of paragraphs (2) and (3) below, coverage shall be provided for such Acquired Organization and its **Insured Persons**, with respect to any **Wrongful Acts** committed or allegedly committed after the effective date of such acquisition or merger.

(2)    If, at the time of an acquisition or merger described in paragraph (1) above, the annual revenues of the Acquired Organization are equal to or less than ten percent (10%) of the annual revenues of the **Insured Organization**, as reflected in the **Insured Organization's** or **Parent Organization's** then most recently concluded fiscal year end financial statements or fiscal quarterly financial statements, then the **Parent Organization** shall provide to the Company written notice of the acquisition or merger containing full details thereof when it next applies for renewal of this Policy.  As a condition precedent to providing coverage for such Acquired Organization upon renewal, the Company, in its sole discretion, may impose additional or different terms, conditions and limitations of coverage and require payment of additional premium.

(3)    If, at the time of an acquisition or merger described in paragraph (1) above, the annual revenues of the Acquired Organization exceed ten percent (10%) of the annual revenues of the **Insured Organization**, as reflected in the **Insured Organization's** or **Parent Organization's** then most recently concluded fiscal year end financial statements or fiscal quarterly financial statements, then the **Parent Organization** shall provide to the Company written notice of the acquisition or merger containing full details thereof, as soon as practicable, but in no event later than sixty (60) days after the date of such acquisition or merger.  If the **Parent Organization** fails to give such notice within the time specified in the preceding sentence, or fails to pay the additional premium required by the Company, coverage for such Acquired Organization and its **Insured Persons** shall terminate with respect to **Claims** first made more than sixty (60) days after such acquisition or merger. As a condition precedent to providing coverage for such Acquired Organization or its **Insured Persons**, the Company, in its sole discretion, may impose additional or different terms, conditions and limitations of coverage and require payment of additional premium.

CHUBB®

**CHUBB** *PROE&O*<sup>SM</sup>

(B)     Cessation of Subsidiaries

If any **Subsidiary** ceases to be a **Subsidiary** before or during the **Policy Period**, then any coverage under this Policy shall continue for such **Subsidiary** and its **Insured Persons** until the expiration of this Policy, but solely for **Claims** for **Wrongful Acts** committed or allegedly committed prior to the effective date of such cessation (and not before the Prior Acts Date shown in Item 7 of the Declarations).

(C)     Conversion of Coverage under Certain Circumstances

If, during the **Policy Period**, either of the following events occurs:

(1)     the acquisition of all or substantially all of the **Parent Organization's** assets by another organization or person or group of organizations or persons acting in concert, or the merger or consolidation of the **Parent Organization** into or with another entity such that the **Parent Organization** is not the surviving entity; or

(2)     another organization, person or group of organizations or persons acting in concert acquires securities or voting rights which results in ownership or voting control by the other organization(s) or person(s) of more than fifty percent (50%) of the outstanding securities representing the present right to vote for the election of directors, trustees, members of the Board of Managers or management committee members of the **Parent Organization**,

then coverage provided by  this Policy shall continue until its  expiration, but solely for **Claims** for **Wrongful Acts** committed or allegedly committed prior to such event (and not before the Prior Acts Date shown in Item 7 of the Declarations).

The **Parent Organization** shall give written notice of such event to the Company as soon as practicable together with such other information as the Company may request, and the entire premium for this Policy will be deemed fully earned as of the date of such event.

**XIV.     REPRESENTATIONS AND SEVERABILITY**

In issuing this Policy the Company has relied upon the statements, representations and information in the **Application**.  All of the **Insureds** acknowledge and agree that all such statements, representations and information (i) are true and accurate, (ii) were made or provided in order to induce the Company to issue this Policy, and (iii) are material to the Company's acceptance of the risk to which this Policy applies.

In the event that any of the statements, representations or information in the **Application** are not true and accurate, this Policy shall be void with respect to any **Insured** who knew as of the effective date of the **Application** the facts that were not truthfully and accurately disclosed (whether or not the **Insured** knew of such untruthful disclosure in the **Application**) or to whom knowledge of such facts is imputed. For purposes of the preceding sentence:

(a)     the knowledge of any **Insured Person** who is a past, present or future chief financial officer, in-house general counsel, chief executive officer, president or chairperson of an **Insured Organization** shall be imputed to such **Insured Organization** and its **Subsidiaries**;

(b)     the knowledge of the person(s) who signed the **Application** for this Policy shall be imputed to all of the **Insureds**; and

(c)     except as provided in (a) above, the knowledge of an **Insured Person** who did not sign the **Application** shall not be imputed to any other **Insured**.



CHUBB *PROE&O*<sup>SM</sup>

**XV.    VALUATION AND FOREIGN CURRENCY**

All premiums, limits, retentions, **Loss** and other amounts under this Policy are expressed and payable in the currency of the United States of America.  If a judgment is rendered, a settlement is denominated or any element of **Loss** under this Policy is stated in a currency other than United States of America dollars, payment under this Policy shall be made in United States of America dollars at the rate of exchange published in The Wall Street Journal on the date the final judgment is reached, the amount of the settlement is agreed upon or the element of **Loss** is due, respectively.

**XVI.    SUBROGATION**

In the event of any payment under this Policy, the Company shall be subrogated to the extent of such payment to all of the **Insureds'** rights of recovery therefor, and the **Insureds** shall execute all papers required and shall do everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable the Company effectively to bring suit or otherwise pursue subrogation rights in the name of any **Insured**.

**XVII.    ACTION AGAINST THE COMPANY**

No action may be taken against the Company unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this Policy. No person or entity shall have any right under this Policy to join the Company as a party to any action against any **Insured** to determine such **Insured's** liability nor shall the Company be impleaded by such **Insured** or legal representatives of such **Insured**.

**XVIII.    PARENT ORGANIZATION RIGHTS AND OBLIGATIONS**

By acceptance of this Policy, the **Parent Organization** acknowledges and agrees that it shall be considered the sole agent of and will act on behalf of each **Insured** with respect to: the payment of premiums and the receiving of any return premiums that may become due under this Policy; the negotiation, agreement to and acceptance of endorsements; the giving or receiving of any notice, including but not limited to giving notice of **Claim** or a notice of termination pursuant to Section XX(A)(1) (but not including  the giving of notice to apply for the Extended Reporting Period); and the receipt  or enforcement of payment of a **Loss** (and the **Parent Organization** shall be responsible for application of any such payment as provided for in this Policy). Each **Insured** acknowledges and agrees that the **Parent Organization** shall act on its behalf with respect to all such matters.

**XIX.    ALTERATION AND ASSIGNMENT**

No change in, modification of, or assignment of interest under this Policy shall be effective except when made by a written endorsement to this Policy which is signed by an authorized employee of Chubb, a division of Federal Insurance Company.

**XX.    TERMINATION OF POLICY**

(A)    This Policy shall terminate at the earliest of the following times:

(1)    upon receipt by the Company of written notice of termination from the **Parent Organization**; provided that this Policy may not be terminated by the **Parent Organization** after the effective date of any event described in Section XIII Changes in Exposure (C) of this Policy;



**CHUBB *PROE&O*<sup>SM</sup>**

---

(2)     upon expiration of the **Policy Period** as set forth in Item 2(B) of the Declarations;

(3)     twenty (20) days after receipt by the **Parent Organization** of a written notice of termination from the Company based upon non-payment of premium, unless the premium is paid within such twenty (20) day period; or

(4)     at such other time as may be agreed upon by the Company and the **Parent Organization**.

(B)     The Company shall refund the unearned premium computed at customary short rates if this Policy is terminated by the **Parent Organization**.  Under any other circumstances the refund shall be computed pro rata.  Payment or tender of any unearned premium by the Company shall not be a condition precedent to the effectiveness of such termination, but such payment shall be made as soon as practicable.

---

**XXI.     BANKRUPTCY**

Bankruptcy or insolvency of any **Insured** shall not relieve the Company of its obligations nor deprive the Company of its rights or defenses under this Policy.

---

**XXII.     HEADINGS**

The descriptions in the headings and sub-headings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

---

*Chubb PROE&O*

# Schedule of Forms

To be attached to and form part of    Company: Federal Insurance Company
Policy No. 8243-6189

Issued to: CONSTRUCTION FINANCIAL ADMINISTRATION SERVICES LLC/DBA CFAS

14-02-14051 (7/15 ed.)

14-02-15491 (12/09 ed.)

14-02-18262 (6/11 ed.)

14-02-19945 (4/14 ed.)

14-02-19981 (6/13 ed.)

14-02-8692 (8/03 ed.)

14-02-9228 (2/10 ed.)

**ENDORSEMENT/RIDER**

Effective date of
this endorsement/rider: August 21, 2017          Federal Insurance Company

                                                 Endorsement/Rider No. 1

                                                 To be attached to and
                                                 form a part of Policy No. 8243-6189

Issued to:   CONSTRUCTION FINANCIAL ADMINISTRATION SERVICES LLC/DBA CFAS

---

FTC, SPAM, TCPA AND INFORMATION DISTRIBUTION LAWS ENDORSEMENT

In consideration of the premium charged, it is agreed that Subsection (A) of Section III., Exclusions is amended by the addition of the following Exclusion:

No coverage will be available under this Policy for any **Claim** against an **Insured** based upon, arising from, or in consequence of:

(a)      any proceeding against the **Insured** brought by the Federal Trade Commission or any other federal, state or local regulatory agency or other administrative body alleging the violation of any federal, state or local laws or regulation of telecommunications; or

(b)      any actual or alleged violation of:

(i)      the United States of America CAN-SPAM Act of 2003 or any amendments thereto or any rules or regulations promulgated thereunder, or any similar provisions of any federal, state, or local statutory law or common law anywhere in the world ;

(ii)     the United States of America Telephone Consumer Protection Act (TCPA) of 1991 or any amendments thereto or any rules or regulations promulgated thereunder, or any similar provisions of any federal, state, or local statutory law or common law anywhere in the world; or

(iii)    any other law, ordinance, regulation or statute used to impose liability in connection with any unsolicited communication, distribution, publication, sending or transmission.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Authorized Representative

# ENDORSEMENT/RIDER

Effective date of
this endorsement/rider: August 21, 2017          Federal Insurance Company

                                                 Endorsement/Rider No. 2

                                                 To be attached to and
                                                 form a part of Policy No. 8243-6189

Issued to:  CONSTRUCTION FINANCIAL ADMINISTRATION SERVICES LLC/DBA CFAS

---

MISCELLANEOUS CONSULTING FIRM ENDORSEMENT

In consideration of the premium charged, it is agreed that the Policy is amended as follows:

(1)     The term **Insured Services**, as defined in Section II, DEFINITIONS (J) is deleted and replaced
        with the following:

        (J)     **Insured Services** means consulting services performed for others for a fee, including
                any such consulting services that are performed electronically utilizing the Internet or a
                network of two or more computers provided that such consulting services shall not
                include: accounting, legal, architectural, engineering, actuarial, asset management,
                investment, financial planning, foreclosure, debt settlement, loan modification or
                refinance, **Medical** or **Utilization Review** services.

(2)     The term **Wrongful Act**, as defined in Section II, Definitions (T), is amended to include any actual
        or alleged:

        (a)     libel, slander, product disparagement, trade libel or other form of defamation;

        (b)     invasion or infringement of the right of privacy or publicity, including but not limited to
                false light, public disclosure of private facts, intrusion and commercial appropriation of
                name, persona or likeness;

        (c)     false arrest, detention or imprisonment; or

        (d)     wrongful entry or eviction, or other invasion of the right of private occupancy,

        committed solely in the performance of or failure to perform **Insured Services**, by an **Insured
        Organization** or by an **Insured Person** acting in his or her capacity as such and on behalf of an
        **Insured Organization**.

(3)     Section III. EXCLUSIONS is amended by adding the following Exclusion:

        No coverage will be available under this Policy for any **Claim** against an **Insured** based upon,
        arising from or in consequence of any:

(a)     advice relating to mergers or acquisitions of any companies, firms, entities, subsidiaries or affiliates; or advice or service regarding the purchase of, investment in, or operation of, any franchise entity or opportunity;

(b)     service where the **Insured** has been given any discretionary authority to make or implement decisions, or any service performed in the **Insured's** capacity as an interim manager or executive of a client or third party;

(c)     failure to maintain or effect, or any consulting on the placement of any insurance, reinsurance or bond; or designing of any terms, conditions or financial structure of any benefit plan or structured settlement; or any refusal or intentional failure to pay or intentional delay in paying all or part of any benefit or payment due or alleged to be due under any insurance contract, bond or any benefit plan;

(d)     actual or alleged guaranty, promise or warranty, either express or implied, or verbal or written, with respect to (i) the future value of any real, personal or intellectual property; or (ii) the future performance or value of any security, investments, or rate of return or interest;

(e)     unauthorized access to, or use or alteration of, any computer program, computer, computer system or communication facilities that are connected thereto; or

(f)     commingling of any money, monetary instrument or securities.

(4)     No coverage will be available under this Policy for any **Claim** against an **Insured** brought or maintained by or on behalf of any governmental or quasi-governmental entity, regulatory or administrative agency or authority; provided that this exclusion shall not apply if such entity, agency or authority brings the **Claim** solely in its capacity as the recipient of **Insured Services**.

(5)     Solely for purposes of the coverage afforded under this Endorsement, Section II. DEFINITIONS, is amended to include the following definitions:

**"Medical Services"** means any rendering or failure to render health care, medical care, or treatment provided to any individual, including without limitation any of the following:  medical, surgical, dental, psychiatric, mental health, chiropractic, osteopathic, nursing, or other professional health care; the furnishing or dispensing of medications, drugs, blood, blood products, or medical, surgical, dental, or psychiatric supplies, equipment, or appliances in connection with such care; the furnishing of food or beverages in connection with such care; the providing of counseling or other social services in connection with such care; and the handling of, or the performance of post-mortem examinations on human bodies.

**"Utilization Review"** means the process of evaluating the appropriateness, necessity or cost of **Medical Services** for purposes of determining whether payment or coverage for such **Medical Services** will be authorized or paid for under any health care plan.  **Utilization Review** shall include prospective review of proposed payment or coverage for **Medical Services**, concurrent review of ongoing **Medical Services**, and retrospective review of already rendered **Medical Services** or already incurred costs.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Effective date of
this endorsement/rider: August 21, 2017          Federal Insurance Company

Endorsement/Rider No. 3

To be attached to and
form a part of Policy No. 8243-6189

Issued to:  CONSTRUCTION FINANCIAL ADMINISTRATION SERVICES LLC/DBA CFAS

---

CHUBB *PROE&O* CONDITIONS ENHANCEMENT ENDORSEMENT

In consideration of the premium charged, it is agreed that the Policy is amended as follows:

1.  Section I, Insuring Clause, is deleted and replaced with the following:

    The Company shall pay, on behalf of an **Insured**, **Loss** on account of a **Claim** first made against the **Insured** during the **Policy Period**, or the Extended Reporting Period if applicable, for a **Wrongful Act** on or after the Prior Acts Date set forth in Item 7 of the Declarations, by the **Insured** or by any entity or natural person for whose **Wrongful Acts** the **Insured** is legally liable.

2.  Paragraph (A) of Section IX, Reporting, is deleted and replaced with the following:

    (A)  **Reporting of Claims and Wrongful Acts:**

       (1)  An **Insured** shall, as a condition precedent to exercising any right to coverage under this Policy, give to the Company written notice of any **Claim** as soon as practicable after the chief executive officer, chief financial officer, in-house general counsel, or any person with the responsibility for the management of insurance claims (or any equivalent position to any of the foregoing) of an **Insured Organization** becomes aware of such **Claim**, but in no event later than:

          (a)  if this Policy expires (or is otherwise terminated) without being renewed with the Company, ninety (90) days after the effective date of such expiration or termination; or

          (b)  the expiration of the Extended Reporting Period, if applicable,

          provided that if the Company sends written notice to the **Parent Organization**, stating that this Policy is being terminated for nonpayment of premium, an **Insured** shall give to the Company written notice of such **Claim** prior to the effective date of such termination.

       (2)  If during the **Policy Period**, or any applicable Extended Reporting Period, an **Insured** becomes aware of circumstances which could give rise to a **Claim** and gives written notice of such circumstances to the Company, then any **Claim** subsequently arising from such circumstances shall be deemed made against the **Insured** during the **Policy Period** in which such circumstances were first reported to the Company, provided any subsequent **Claim** is reported to the Company as soon as practicable, but in no event later

than ninety (90) days after the chief executive officer, chief financial officer, in-house general counsel or any person with the responsibility for the management of insurance claims (or any equivalent position to any of the foregoing) of an **Insured Organization** becomes aware of such **Claim**.

    (3) All notices of **Claims** required under Section IX(A)(1) and notices of Wrongful Acts under Section IX(A)(2) must be either mailed to the address set forth in Section X, NOTICE, or emailed to specialtyclaims@chubb.com.

3. Paragraph (B) of Section IX, Reporting, is deleted.

4. Paragraph (A) of Section X, Notice, is deleted and replaced with the following:

    (A) All notices to the Company under this policy of **Claims** or circumstances shall be given in writing, either emailed to specialtyclaims@chubb.com or mailed to the following address:

        Attn: Claims Department
        Chubb Group of Insurance Companies
        82 Hopmeadow Street
        Simsbury, CT 06070-7683

5. Paragraph (B) of Section XI, Defense and Settlement, is deleted and replaced with the following:

    (B) The Company may make any investigation it deems necessary, and may, with the consent of the **Insureds**, make any settlement of any **Claim** it deems appropriate.

6. Paragraph (A) of Section XIII, Changes in Exposure, is deleted and replaced with the following:

    (A) If before or during the **Policy Period** an **Insured Organization** acquires voting rights in another entity such that the acquired entity becomes a **Subsidiary**, then coverage shall be provided for such **Subsidiary** and its **Insureds** solely for **Claims** for **Wrongful Acts** after the effective date of such acquisition.

7. Section XIV, Representations and Severability, is deleted and replaced with the following:

    (A) In granting coverage to the **Insureds** under this Policy, the Company has relied upon the declarations and statements in the **Application**. Such declarations and statements are the basis of the coverage under this Policy and shall be considered as incorporated in and constituting part of this Policy.

    (B) The **Application** for coverage shall be construed as a separate **Application** for coverage by each **Insured Person**. With respect to the declarations and statements in such **Application**, no knowledge possessed by an **Insured Person** shall be imputed to any other **Insured Person**.

    (C) However, in the event that such **Application** contains any misrepresentations made with the actual intent to deceive or contains misrepresentations which materially affect either the acceptance of the risk or the hazard assumed by the Company under this Policy, then no coverage shall be afforded for any **Claim** based upon, arising from or in consequence of any such misrepresentations with respect to:

        (1) any **Insured Person** who knew of such misrepresentations (whether or not such individual knew such **Application** contained such misrepresentations); or

        (2) any **Insured Organization** if any past or present chief executive officer, chief financial officer or in-house general counsel (or any equivalent position to any of the foregoing) of an

**Insured Organization** knew of such misrepresentations (whether or not such individual knew such **Application** contained such misrepresentations).

(D)   The Company shall not be entitled under any circumstances to void or rescind this Policy with respect to any **Insured**.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Authorized Representative

**ENDORSEMENT/RIDER**

Effective date of
this endorsement/rider: August 21, 2017          Federal Insurance Company

Endorsement/Rider No. 4

To be attached to and
form a part of Policy No. 8243-6189

Issued to:   CONSTRUCTION FINANCIAL ADMINISTRATION SERVICES LLC/DBA CFAS

PRIOR ACTS EXCLUSION FOR INCREASED LIMITS ENDORSEMENT

In consideration of the premium charged, it is agreed that the Company's maximum limit of liability under this Policy for **Loss** on account of any **Claim** based upon, arising from, or in consequence of any **Wrongful Act** by any **Insured** on or prior to January 1, 2017 shall be $1,000,000 which amount shall be part of, and not in addition to, the Company's maximum aggregate Limit of Liability set forth in Item 3 of the Declarations for this Policy.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Effective date of
this endorsement/rider: August 21, 2017          Federal Insurance Company

                                                 Endorsement/Rider No. 5

                                                 To be attached to and
                                                 form a part of Policy No. 8243-6189

Issued to:  CONSTRUCTION FINANCIAL ADMINISTRATION SERVICES LLC/DBA CFAS

_____

UNAUTHORIZED NETWORK ACCESS EXCLUSION ENDORSEMENT

In consideration of the premium charged, it is agreed that Section III, Exclusions, of the Policy is amended to include the following exclusion:

No coverage will be available under this Policy for any **Claim** against an **Insured** based upon, arising from or in consequence of any unauthorized or exceeded authorized access to, use of or alteration of, any computer program, software, computer, computer system or any input, output, processing, storage and communication devices that can be connected thereto.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.


_____
Authorized Representative

**ENDORSEMENT**

Effective date of
this endorsement:   August 21, 2017      Co

Company:   Federal Insurance Company

Endorsement No. 6

To be attached to and
form a part of Policy No. 8243-6189

Issued to:   CONSTRUCTION FINANCIAL ADMINISTRATION SERVICES LLC/DBA CFAS

---

**NORTH CAROLINA AMENDATORY ENDORSEMENT**

In consideration of the premium charged, it is agreed that:

1.      Section VI Extended Reporting Period is amended to add the following at the end of such Section:

"(C)    Any Insured Organization or any Insured Person shall have the option of purchasing the
        Extended Reporting Period with a limit of liability that is equal to, and in addition to, the
        maximum aggregate Limit of Liability for the immediately preceding Policy Period (the
        "reinstated limit").   To exercise such option, the written notice of election to purchase the
        Extended Reporting Period must state if a reinstated limit of liability is desired.   If such notice
        does not state that a reinstated limit of liability is desired, the limit of liability for the Extended
        Reporting Period will be part of, and not in addition to, the maximum aggregate Limit of
        Liability for the immediately preceding Policy Period.

        If an Insured Organization or Insured Person elects a reinstated limit, the premium for such
        Extended Reporting Period set forth in Item 5(B) of the Declarations shall be adjusted
        upward, but in no event shall such premium exceed 1100% of the annual premium for the
        immediately preceding Policy Period.

(D)     No coverage will be available under this Policy for Loss from Claims made during an
        Extended Reporting Period based on, arising out of, directly or indirectly resulting from, in
        consequence of, or in any way involving any fact, circumstance, situation, transaction, event,
        Claim or Wrongful Act:   (a) underlying or alleged in any prior and/or pending litigation as of
        the termination date of this Policy; or (b) which has been the subject of any notice given
        before the termination date under any policy of insurance, including this Policy."

2.      Section XX Termination of Policy (A)(2) is amended to add the following at the end of such paragraph
        (2):

        "provided that if the Company does not renew this Policy it will mail or deliver at least forty-five (45)
        days advance written notice of non-renewal, including the reason(s) for such non-renewal, to the
        Parent Organization at the address last known to the Company, with a copy to the mortgagee or loss
        payee and the agent or broker of record, if any;"

3.      Section XX Termination of Policy (A)(3) is amended by deleting the "or" at the end of such paragraph (3) and adding the following:

"provided that such notice of termination by the Company will state the reason for, and the effective date of, such termination and will be mailed or delivered to the Parent Organization at the address shown on this Policy, with a copy to the agent or broker of record, if any, and to the mortgagee or loss payee, if any; or"

4.      Section XX Termination of Policy (A) is amended to add the following at the end of such paragraph (A):

"Proof of mailing of any notice of termination or non-renewal by the Company shall be sufficient proof of notice.

Within forty-five (45) days after receipt of a written request from the Parent Organization, the Company will mail to the Parent Organization loss information respecting its account for the past three (3) years, which information shall include, but not be limited to, aggregate information on total open and closed Claims (which shall include the date, description of occurrence, and amount of payments) and information on any notice of occurrence."

5.      The Policy will be deemed to have been amended to the extent necessary to effect the purposes of this Amendatory Endorsement.

The regulatory requirements set forth in this Amendatory Endorsement shall supersede and take precedence over any provisions of the Policy or any endorsement to the Policy, whenever added, that are inconsistent with or contrary to the provisions of this Amendatory Endorsement, unless such Policy or endorsement provisions comply with the applicable insurance laws of the state of North Carolina.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Effective date of
this endorsement/rider: August 21, 2017          Federal Insurance Company

                                                 Endorsement/Rider No. 7

                                                 To be attached to and
                                                 form a part of Policy No. 8243-6189

Issued to:  CONSTRUCTION FINANCIAL ADMINISTRATION SERVICES LLC/DBA CFAS

---

### COMPLIANCE WITH APPLICABLE TRADE SANCTION LAWS

It is agreed that this insurance does not apply to the extent that trade or economic sanctions or other similar laws or regulations prohibit the coverage provided by this insurance.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative